IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

Henry S. Scharpenberg, et al.,         )
                                       )
    Plaintiffs,                        )  Case No. 1:09cv1058 (GBL)
                                       )
v.                                     )
                                       )
Robert S. Carrington, et al.,          )
                                       )
    Defendants.                        )

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant McNeil Technologies, Inc.'s Motion to Dismiss Counts II and IV of the Amended Complaint. This case concerns Plaintiffs' allegations that Defendants published false statements about Plaintiff Henry Scharpenberg's billing practices, tortiously interfered with his at-will contract with Defendant McNeil Technologies, Inc. (McNeil), and conspired to financially harm Plaintiffs in their business. There are four issues before the Court. The first issue is whether McNeil is immune from liability under the doctrine of absolute immunity for allegedly defamatory statements made by its Contracts Manager in response to a government inquiry into Mr. Scharpenberg's purportedly fraudulent conduct.
The second issue is whether McNeil's Consultant Agreement with Mr. Scharpenberg permitted McNeil's Contracts Manager to make the allegedly defamatory statements. The third issue is whether Mr. Scharpenberg states a plausible business conspiracy claim under

Federal Rules of Civil Procedure 12(b)(6) and 9(b). The fourth issue is whether the parties' Consultant Agreement allowed McNeil to terminate its contract with Mr. Scharpenberg without cause.

The Court grants McNeil's Motion to Dismiss Count II (defamation) because McNeil, as a government contractor, has absolute immunity from civil liability for statements made in response to a government contracting officer's inquiry, and alternatively, because McNeil's Consultant Agreement with Mr. Scharpenberg permitted McNeil's Contracts Manager to make the statements at issue in this case. The Court also grants McNeil's Motion to Dismiss Count IV (statutory business conspiracy) because the facts set forth in the Amended Complaint fail to plausibly suggest a conspiracy under Virginia Code § 18.2-499 and the parties' Consultant Agreement allowed McNeil to terminate its contract with Mr. Scharpenberg at will.

## I. BACKGROUND

McNeil Technologies, Inc. is a business that provides professional services to the federal government in the areas of language, intelligence, information technologies, record management and aviation. In 2007, McNeil became a government contractor through its purchase of ViStar Consulting, which at the time of the acquisition had a contract with the Department of the Army for a performance management system program known as the Strategic Management System ("SMS") Program. Mr. Robert

Carrington is a Supervisory Director and former Contracting Officer Representative ("COR") for the SMS Program.

After purchasing ViStar, McNeil entered into a contract ("Consultant Agreement") with Mr. Scharpenberg, owner of HSS & Associates, LLC ("HSS"), for his services in connection with the SMS Program. The parties' Consultant Agreement contained two provisions relevant to this case. The "ETHICS" provision permitted McNeil to disclose information pertaining to Mr. Scharpenberg's "retention, [] duties performed and the compensation paid should there be proper inquiry from such a source as an authorized U.S. Government agency or should [McNeil] believe it has a legal obligation to disclose such information." (Consultant Agreement, Am. Compl., Ex. 1.) The "TERMINATION" provision permitted either McNeil or Mr. Scharpenberg to terminate the Consultant Agreement "at any time by giving a two (2) week notice to the other." (Consultant Agreement, Am. Compl., Ex. 1.)

Beginning in 2008, Mr. Carrington observed Mr. Scharpenberg's time and attendance at the SMS Program office and suspected that Mr. Scharpenberg was improperly billing the government for time he did not work. Mr. Carrington shared his suspicions regarding Mr. Scharpenberg in a November 7, 2008, Memorandum and accompanying documents with McNeil. The Memorandum summarized Mr. Carrington's findings regarding what he deemed to be Mr. Scharpenberg's purposeful financial misconduct,

3

specifically, the falsification of invoices relating to the number of hours worked. The Memorandum also called for direct and immediate action by McNeil.

Shortly thereafter, Ms. Ruby Mixon, the SMS Program COR, sent McNeil the following letter ordering McNeil to investigate Mr. Scharpenberg's alleged fraudulent billing practices:

> The above referenced documents[1] allege your company has submitted fraudulent invoices for processing from August 2008 to the present relating to hours reported by Mr[.] Scharpenberg.
>
> It is imperative that you investigate this matter immediately and take the appropriate actions to correct it[.] If the allegation is determined to have merit, you shall notify this office immediately and remove Mr. Scharpenberg from performing under this contract.

(Government Letter, Am. Compl., Ex. 9.)

On November 13, 2008, before receiving the Government Letter, McNeil gave Mr. Scharpenberg a two-week written notice of its intent to terminate their Consultant Agreement based on Mr. Scharpenberg's fraudulent billings for work not actually performed. Thereafter, McNeil's Contracts Manager sent Ms. Mixon a letter indicating that McNeil's management had conducted a full review of the matter using the documentation provided by Mr. Carrington, which included daily statements detailing his observations of Mr. Scharpenberg, daily logs capturing Mr. Scharpenberg's billed hours for the months of September and October 2008, and reports of two government access systems

---

[1] Ms. Mixon's letter referenced Mr. Carrington's November 7, 2008, Memorandum and accompanying documents to McNeil.

tracking Mr. Scharpenberg's entry and departure from the Pentagon. The letter further stated that "[t]he allegations appear to have merit based on documentation captured and provided by Mr. Carrington to McNeil Technologies[.]" (Response Letter, Am. Compl. 45, Ex. 6.)

Following termination of the parties' Consultant Agreement, Mr. Scharpenberg filed suit in the Circuit Court for the City of Alexandria against Mr. Carrington and McNeil for defamation, tortious interference with at-will contract, and statutory business conspiracy. Subsequently, the United States Attorney for the Eastern District of Virginia removed the case to this Court pursuant to 28 U.S.C. § 2679(d)(3). After removal, Mr. Scharpenberg amended his Complaint. The Amended Complaint sets forth the following four causes of action: (I) defamation (against Mr. Carrington); (II) defamation (against McNeil); (III) tortious interference with at-will contract (against Mr. Carrington); and (IV) statutory business conspiracy (against Mr. Carrington and McNeil). McNeil now moves for dismissal of the defamation and statutory business conspiracy counts against it.

## II. STANDARD OF REVIEW

A Federal Rule of Civil Procedure 12(b)(6) motion should be granted unless an adequately stated claim is "supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007) (internal citations omitted); see FED. R. CIV. P. 12(b)(6).

"A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Twombly*, 550 U.S. at 555. A complaint is also insufficient if it relies upon "naked assertions devoid of further factual enhancement." *Iqbal*, 129 S. Ct. at 1949 (internal citations omitted). Courts will disregard "unwarranted inferences, unreasonable conclusions, [and] arguments." *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 n.26 (4th Cir. 2009); *see also Iqbal*, 129 S.Ct. at 1951-52.

In order to survive a Rule 12(b)(6) motion to dismiss, a complaint must set forth "a claim for relief that is plausible on its face." *Id.*; *Twombly*, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 555 U.S. at 556.

In considering a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. *Mylan Lab., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). In addition to the complaint, the court may also examine "documents incorporated into the complaint by reference, and matters of which a court may take judicial

notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007). "Conclusory allegations regarding the legal effect of the facts alleged" need not be accepted. *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995). Because the central purpose of the complaint is to provide the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests," the plaintiff's legal allegations must be supported by some factual basis sufficient to allow the defendant to prepare a fair response. *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

### III. ANALYSIS

#### A. Count II (defamation)

The Court grants McNeil's Motion to Dismiss Count II (defamation) because McNeil, as a government contractor, has absolute immunity from civil liability for statements made in response to a government contracting officer's inquiry concerning alleged fraudulent conduct by an independent contractor. Additionally, McNeil's Consultant Agreement with Mr. Scharpenberg permitted McNeil's Contracts Manager to make the allegedly defamatory statements at issue in this case.

1. *Absolute Immunity*

In *Mangold v. Analytic Services*, 77 F.3d 1442, 1444 (4th Cir. 1996), the Fourth Circuit extended the doctrine of absolute immunity to private persons under contract with the government. Specifically, the court held that government contractors are

7

cloaked with absolute immunity for statements made in response to official government inquiries in a government procurement fraud investigation concerning their dealings with the government. *Id.* at 1444. In that case, the Air Force Office of Special Investigations inquired into allegations that a colonel pressured a private corporation under contract with the government to hire a family friend. *Id.* When the corporation's employees responded to queries regarding the colonel's practices and confirmed the alleged misconduct, the colonel filed suit for damage to his reputation and position. *Id.* at 1445. Relying on a public policy rationale, the Fourth Circuit concluded that the employees were necessarily immune from liability for their statements because when a governmental function is delegated to private contractors, the latter must receive the same immunity afforded federal employees in order to encourage truthful reporting. Moreover, the public's interest in avoiding fraud, waste and government mismanagement would be further served by extending absolute immunity to government contractors. *Id.* at 1447.

Like *Mangold*, the allegedly defamatory statements here stemmed from an official government contract fraud inquiry. Just as the Air Force officers' queries to the corporation in *Mangold* opened official inquiries into the colonel's improper practices, the Government Letter was an inquiry into Mr. Scharpenberg's alleged fraudulent billings. Ms. Mixon sent the Government

Letter in her capacity as the SMS Program COR acting on the government's behalf. She expressly demanded that McNeil "investigate th[e] matter immediately and take the appropriate actions to correct it[.]" (Government Letter, Am. Compl., Ex. 9.) Thus, there was no ambiguity as to the Government Letter's origin—it came from the SMS Program COR acting on behalf of the government—and purpose—to inquire into Mr. Scharpenberg's alleged fraudulent billings.

Additionally, the government required McNeil to report its findings if the allegations concerning Mr. Scharpenberg had merit. Pursuant to Ms. Mixon's order, McNeil had a governmentally imposed duty to respond to the Government Letter. As such, when McNeil's Contracts Manager indicated to Ms. Mixon that "[t]he allegations appear to have merit" and therefore McNeil "has released Mr. Henry Scharpenberg from [his] contract as an independent consultant working on the SMS contract[,]" the statements were responses to an official government inquiry. (Response Letter, Am. Compl. 45, Ex. 6.) Compared to the employees in *Mangold* who enjoyed absolute immunity from liability for their responses to official Air Force inquiries, McNeil must also be afforded the same immunity for its Contracts Manager's statements in response to the Government Letter if McNeil is to properly carry out its obligations under the SMS Program. As a government contractor, McNeil must be able to exercise its duties free from fear of damage suits. To do so, it must enjoy

9

absolute immunity from liability for statements made in response to government inquires concerning the SMS Program.

Mr. Scharpenberg contends that McNeil should not be awarded absolute immunity for three reasons. First, he argues that McNeil failed to investigate the matter before making the alleged defamatory statements in its Response Letter. Second, he argues that Mr. Carrington's documents are unreliable because Mr. Carrington was not the SMS Program COR at the time he sent the November 7, 2008 Memorandum and accompanying documents to McNeil. Finally, Mr. Scharpenberg argues that McNeil erred in relying on Mr. Carrington's documents to conclude that the allegations concerning Mr. Scharpenberg's fraudulent billings had merit.

The Court is unpersuaded by Mr. Scharpenberg's arguments. First, McNeil's Response Letter explicitly states that McNeil's management conducted a full review of the matter using the documentation provided by Mr. Carrington, which included daily statements detailing Mr. Carrington's observations of Mr. Scharpenberg, daily logs capturing Mr. Scharpenberg's billed hours for the months of September and October 2008, and reports of two government access systems tracking Mr. Scharpenberg's entry and departure from the Pentagon. Contrary to Mr. Scharpenberg's contention, McNeil investigated the matter before responding to the government's inquiry.

Second, it is immaterial that Mr. Carrington was not the SMS Program COR when he observed Mr. Scharpenberg's conduct, recorded

it, and sent his reports to McNeil. A government officer may report what he deems to be a fraud or waste of government resources committed by a government subcontractor, even if his job description does not require him to do so. Finally, given Mr. Carrington's position and authority as the SMS Program Supervisory Director, McNeil acted reasonably in relying on the documents provided by Mr. Carrington to conclude that Mr. Scharpenberg had in fact engaged in fraudulent billings. *Mangold* did not set forth restrictions on *how* a government contractor must comply with an official government inquiry, but only that the contractor is immune from liability for responses to the inquiry. Absent detailed instructions by Ms. Mixon on how the investigation should have been conducted, McNeil cannot be faulted for relying on Mr. Carrington's findings and documents in completing its own investigation. Therefore, Mr. Scharpenberg's arguments regarding McNeil's investigation, Mr. Carrington's authority and the document's unreliability are unavailing.

2. *Consultant Agreement*

Even if McNeil does not enjoy absolute immunity, the Court dismisses Count II of the Amended Complaint because the Consultant Agreement contained an "ETHICS" provision which permitted McNeil's Contracts Manager to make the alleged defamatory statements at issue in this case. The principles governing contract interpretation are well-established: "when the

terms of a contract are clear and unambiguous, a court must give them their plain meaning." *Pocahontas Mining Ltd. Liability Co. v. Jewell Ridge Coal Corp.*, 556 S.E.2d 769, 771 (Va. 2002) (citations omitted). Courts must look to "the intention of the parties as expressed by them in the words they have used, and [] are bound to say that the parties intended what the written instrument plainly declares." *Meade v. Wallen*, 311 S.E.2d 103, 104 (Va. 1984). The "ETHICS" provision provided that McNeil could disclose facts relating to Mr. Scharpenberg's "compensation [] should there be proper inquiry from such a source as an authorized U.S. Government agency or should [McNeil] believe it has a legal obligation to disclose such information." (Consultant Agreement, Am. Compl., Ex. 1.) As discussed, the Government Letter was an official government inquiry.

The inquiry came from an authorized U.S. government agency—the Department of the Army. As the SMS Project's prime contractor, McNeil reasonably believed it had a duty to disclose information concerning one of its independent contractors.

An inquiry concerning Mr. Scharpenberg's billing practices is equivalent to an inquiry concerning his compensation because the number of hours worked directly translated to the amount of compensation received. Applying the "ETHICS" provision, McNeil's Contracts Manager had a right to make the allegedly defamatory statements in the Response Letter. Therefore, McNeil is shielded

12

from liability even without the absolute immunity it enjoys as a government contractor.

B. Count IV (statutory business conspiracy)

The Court grants McNeil's Motion to Dismiss Count IV (statutory business conspiracy) because the Amended Complaint fails to set forth sufficient facts which plausibility suggest a conspiracy under Virginia Code § 18.2-499 and the parties' Consultant Agreement allowed McNeil to terminate its contract with Mr. Scharpenberg at will.

1. *Plausibility under Rule 12(b)(6)*

To state a claim for statutory conspiracy under Virginia Code § 18.2-499, a plaintiff must show: (1) a combination of two or more persons for the purpose of willfully and maliciously injuring plaintiff in his business; and (2) resulting damage to plaintiff. VA. CODE § 18.2-499; *Simmons v. Miller*, 544 S.E.2d 666, 676 (Va. 2001).

In addition to *Iqbal's* plausibility requirement, allegations of "business conspiracy, like fraud, must be pleaded with particularity, and with more than 'mere conclusory language.'" *Gov't Employees Ins. Co. v. Google, Inc.*, 330 F.Supp.2d 700, 706 (E.D. Va. 2004) (citation omitted). "[T]he circumstances to be pled with particularity [under Rule 9(b)] . . . . are the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what he

obtained thereby." *Feeley v. Total Realty Mgmt.*, No. 08cv1212, 2009 WL 2902505, at *9 (E.D. Va. Aug. 28, 2009)(citation omitted). Failure to plead fraud with Rule 9(b)'s required particularity is treated as a failure to state a claim under Rule 12(b)(6). *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 n.5 (4th Cir. 1999).

In Count IV of the Amended Complaint, Mr. Scharpenberg alleges that McNeil made defamatory statements in its Response Letter, as did Mr. Carrington in his November 7, 2008, Memorandum to McNeil. However, the Amended Complaint is devoid of factual allegations suggesting when or how McNeil and Mr. Carrington entered into an agreement to act jointly to maliciously injure Mr. Scharpenberg or HSS. There are no factual allegations suggesting how McNeil allegedly acted in concert with Mr. Carrington for the purpose of causing financial harm to Mr. Scharpenberg or HSS. Instead, Mr. Scharpenberg is asking this Court to assume that McNeil agreed with Mr. Carrington to engage in conduct intended to injure Mr. Scharpenberg or HSS, without mention of any reason why.

Where McNeil was the SMS Program's prime contractor while Mr. Scharpenberg was merely a consultant hired at will, it is unclear what motive McNeil would have to enter into an agreement with Mr. Carrington, a government official, to harm Mr. Scharpenberg or HSS. Additionally, the absence of any economic

incentive for McNeil and Mr. Carrington suggests a lack of motive to injure Mr. Scharpenberg and HSS. Without additional factual allegations, the Court finds that a business conspiracy is implausible and insufficiently pled.

Mr. Scharpenberg's argument that a conspiracy claim may be established by proof of a tacit understanding is contrary to the law of this jurisdiction. As stated, allegations of a business conspiracy must be pled with particularity beyond mere conclusory language. This requirement was made clear by this Court in *Feeley*, wherein it granted the defendant banks and real estate companies' motion to dismiss claims of conspiracy to commit fraud and civil conspiracy to defraud because the plaintiff homeowners' amended complaint failed to allege sufficient facts from which to infer a meeting of the minds. 2009 WL 2902505 at *9. The amended complaint there contained no allegations showing how the banks' conduct, along with those of their agents and the real estate companies created an agreement to injure plaintiff homeowners. *Id.* The plaintiffs' broad brush general allegations and statements of mere parallel conduct failed to comply with the particularity requirements of Rule 9(b). *Id.* Likewise, Mr. Scharpenberg's Amended Complaint suffers from the same deficiency because it lacks sufficient facts suggesting an agreement between McNeil and Mr. Carrington to harm Mr. Scharpenberg or HSS. Because the Amended Complaint fails to show the elements of a

claim for statutory conspiracy, it thereby fails to satisfy the pleading standards of *Twombly* and *Iqbal* and Rule 9(b)'s particularity requirement. Therefore, the Court grants McNeil's Motion to Dismiss Plaintiffs' claim for statutory business conspiracy.

2. *Consultant Agreement*

Pursuant to the Consultant Agreement, McNeil could terminate its contract with Mr. Scharpenberg at will by giving timely notice. On its face, the "TERMINATION" provision permitted either McNeil or Mr. Scharpenberg to terminate the Consultant Agreement "at any time by giving a two (2) week notice to the other." (Consultant Agreement, Am. Compl., Ex. 1.) Therefore, even absent a finding of fraudulent conduct by Mr. Scharpenberg, McNeil could terminate the Consultant Agreement simply by giving a two-week notice, which it properly did on November 13, 2008. Where the Consultant Agreement alone allowed McNeil to remove Mr. Scharpenberg from the SMS Program, it need not conspire with Mr. Carrington to injure Mr. Scharpenberg or HSS.

## IV. CONCLUSION

The Court grants McNeil's Motion to Dismiss Count II (defamation) because McNeil has absolute immunity from civil liability for statements made in response to a government contracting officer's inquiry, and alternatively, because McNeil's Consultant Agreement with Mr. Scharpenberg permitted

16

McNeil's Contracts Manager to make the statements at issue in this case. The Court also grants McNeil's Motion to Dismiss Count IV (statutory business conspiracy) because the Amended Complaint fails to set forth sufficient facts which plausibly suggest a conspiracy under Virginia Code § 18.2-499 and the parties' Consultant Agreement allowed McNeil to terminate its contract with Mr. Scharpenberg at will. Accordingly, it is hereby

ORDERED that Defendant McNeil Technologies, Inc.'s Motion to Dismiss Counts II and IV of the Amended Complaint is GRANTED.

The Clerk is directed to forward a copy of the Memorandum Opinion to counsel.

Entered this 12th day of February, 2010.

Alexandria, Virginia

/s/
Gerald Bruce Lee
United States District Judge